UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRU-CON CONSTRUCTION CORP., et al., | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 4:07CV00495 ERW |
| CONTROLLED AIR, INC., | ) |
| Defendant(s). | ) |

# MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Controlled Air, Inc.'s Motion to Abstain or to Dismiss [doc. #8].

## I. BACKGROUND FACTS[1]

Plaintiff Fru-Con Construction Corporation is a Missouri Corporation, and Plaintiff Austin Maintenance & Construction, Inc. is a Delaware Corporation; these two Plaintiffs entered into a joint venture, doing business as Fru-Con/Austin, JV (collectively "Plaintiffs"). Defendant is a Kansas corporation, with its principal place of business in Kansas. Plaintiffs entered into an Engineering, Procurement, Construction, and Start-up Agreement ("EPC Contract") with Nordic Biofuels of Ravenna, L.L.C. ("Nordic"), not a party to this action, to provide design, engineering, procurement, construction, installation, commissioning, start-up, training, and testing of an ethanol production facility located in Ravenna, Nebraska ("the Project").

---

[1] For purposes of a motion to dismiss, all facts in the Plaintiffs' complaint are taken as true, and form the basis of this Court's recitation.

1

Plaintiffs subcontracted some of their obligations to Defendants. Plaintiffs and Defendant entered into a contract ("the contract") on February 21, 2006, in which Defendant was hired by Plaintiffs to provide labor and services for the construction of the Project. This agreement was modified on May 16, 2006, June 12, 2006, and August 8, 2006. Plaintiffs allege that Defendant breached the Contract by failing to perform its duties and obligations under the terms of the Contract. Plaintiffs further allege that on January 17, 2007, Defendant acknowledged its inability to satisfy the terms of the Contract and informed Plaintiffs that it was abandoning the remaining work to be performed. Plaintiffs allege that Defendants breach of the Contract has resulted in damages to them in excess of $1.5 million.

## II. PROCEDURAL HISTORY

On March 1, 2007, Controlled Air, Defendant in the pending case, filed a construction lien with the Register of Deeds, Buffalo County, Nebraska, in order to collect $1,496,636.09, the amount Defendant contends it is owed from Plaintiffs. On March 9, 2007, Plaintiffs filed their complaint in the present case before this Court. Following the commencement of this lawsuit, Defendants Controlled Air filed suit in Nebraska State Court to enforce its construction lien. Defendant has filed the pending Motion to Dismiss, or in the alternative to abstain from asserting jurisdiction during the pendency of the Nebraska action. The Court will now address Defendant's motion.

## IV. DISCUSSION[2]

---

[2]The Court notes that Defendant, in their memorandum in support of their motion, first address their motion to abstain, and secondly address their motion to dismiss. However, if the Court lacks jurisdiction of the Defendant then the case must be dismissed. Therefore the Court will address the question of jurisdiction first, and then, if jurisdiction is found to be proper, address Defendant's request that the Court abstain from asserting that jurisdiction.

Defendant argues that the case should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction over the Defendant, or under Rule 12(b)(3) for improper venue. Fed. R. Civ. P. 12(b)(2) & (3). In the alternative, Defendant argues that the Court should abstain.

**A. MOTION TO DISMISS**

The Court will first discuss Defendant's Motion to Dismiss for lack of jurisdiction and improper venue.

### 1. Lack of Personal Jurisdiction

Defendant argues that personal jurisdiction is lacking, and therefore the case should be dismissed. Plaintiffs assert that personal jurisdiction is present on two bases: (1) the Contract at issue provides sufficient minimum contacts with Missouri; (2) the Contract contains a valid forum selection clause.

Federal Rule of Civil Procedure 12(b)(2) allows a party to file a motion to dismiss for "lack of jurisdiction of the person." Fed. R. Civ. P. 12(b)(2). In order for a Court to exercise jurisdiction over a defendant, two requirements must be met: 1) jurisdiction must be allowed in accordance with the Missouri long-arm statute; and 2) the reach of the long-arm statute must comport with due process. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004). These two requirements essentially collapse into the later, as Missouri interprets its long-arm statute in accordance with the limits permitted under the due process clause. *See Enterprise Rent-A-Car Co. v. U-Haul International Inc.*, 327 F.Supp.2d 1032, 1036 (E.D.Mo. 2004); *See also State ex rel K-Mart Corp. v. Holliger*, 986 S.W.2d 165, 168 (Mo. 1999). The Supreme Court, in the landmark decision of *International Shoe*, held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). The definition of minimum contacts depends on whether personal jurisdiction is general or specific. General jurisdiction exists where the defendant has continuous and systematic general business contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416 (1984). The notion of fair play, in the case of specific jurisdiction, "is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted).

The first basis for jurisdiction, asserted by Plaintiffs, is that the Contract was entered into in Missouri. The Missouri long-arm statute specifically allows for jurisdiction over a corporation that makes a contract within the state. Mo.Rev.Stat. § 506.500.1.(2). "For purposes of long-arm jurisdiction, a contract is made where acceptance occurs." *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 119 (Mo.Ct.App. 2002). The Parties dispute where the final contract was accepted. Plaintiffs assert that all the material terms of the agreement were finalized at a February 21, 2006 meeting between representatives of the Parties in Ballwin, Missouri. Defendant asserts that the final form written contract was mailed to Defendant at Defendant's office in Kansas; at which time Defendant signed the Contract without any alterations. The facts of this case are very similar to the case of *Johnson Heater Corp.*, where the Court concluded that the contract was signed and therefore finalized in Wisconsin. *Id.* ("The offer was accepted when Deppe signed the Purchaser Acceptance, without any additions, and returned it to Johnson Heater."). The Court concludes that the final Contract was entered into in Kansas, where it was signed by Defendant. Therefore, the formation of the Contract alone is insufficient to assert jurisdiction over Defendant.

However, the Missouri long arm statute also provides for jurisdiction over individuals who transact any business within the state. Mo.Rev.Stat. § 506.500.1.(1) ("Any person or firm . . . or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm or corporation . . . to the jurisdiction of the courts of this state as to any conduct arising from the doing of any of such acts: (1) the transaction of any business within the state."). "Missouri courts have held that personal jurisdiction is appropriate under the long-arm statute in a contract dispute if the nonresident defendant entered the state for even one meeting which related to the contract at issue." *May Department Stores Co. v. Wilansky*, 900 F.Supp. 1154, 1162 (E.D.Mo. 1995); *see also Boatmen's First National Bank of Kansas City v. Bogina Petroleum Engineers*, 794 S.W.2d 703, 703 (Mo.Ct.App. 1990) ("In *State ex rel. Metal Service Center v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984), the court held that the term 'transaction of any business' in § 506.500.1 must be construed broadly."). The contact with the state of Missouri "may consist of a single transaction, if that is the transaction sued upon." *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984). The key to determining the constitutional limits of the Missouri long-arm statute is determining whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In applying the above law to the facts of the present case, the Court finds that the Defendant had sufficient contacts with the state of Missouri to justify jurisdiction over the Defendant in an action involving those contacts. On two separate occasions, January 12, 2006, and February 21, 2006, representatives from the Parties' corporations met at Plaintiff Fru-Con's offices in Ballwin, Missouri, to discuss the terms and conditions of the Contract. The Court finds

that the formulation of the terms of the Contract within the State of Missouri satisfies both the Missouri long-arm statute and the due process clause of the United States Constitution, even if the Contract was officially signed in Kansas.

In the alternative, the Court notes that jurisdiction is also proper under the forum selection clause. "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001); *see also Burker King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1972) ("We have noted that, because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court. For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." (internal quotation omitted)). Therefore, assuming the forum selection clause is valid, this provides an alternate basis for personal jurisdiction.

**2. Venue**

Defendant also asserts that the case should be dismissed because venue is improper in the state of Missouri. Rule 12(b)(3) provides for the dismissal of an action for improper venue. Fed. R. Civ. P. 12(b)(3). Although it is unclear from the brief, it appears that Defendant is arguing that the Eastern District of Missouri is an inconvenient forum, and that the forum selection clause is invalid and therefore insufficient to provide venue in this district.

As an initial matter, the Parties disagree over the controlling precedent. Defendant relies upon Missouri case law in support of its position that the forum selection clause is unreasonable, whereas Plaintiffs argue that venue is a procedural question and therefore controlled by federal law. The question of controlling law in the context of a forum selection clause is not a

straightforward one. A well articulated opinion from the Eastern District of Missouri, states the proper resolution to this issue.

> In a sense, the validity of a venue limitation provision is a matter of contract law. In a larger sense, however, the issue concerns the proper venue in the Federal Court system. Venue is clearly a matter of procedure, and, as such, governed by Federal law. The provision does not alter existing rules of contract enforcement or interpretation, but rather, alters the venue provisions as set out in the relevant statutes. The venue statutes of Missouri do not apply in this Court, and the provision thereof alters only the Federal statutory scheme as to venue. This attempted alteration of the Federal venue provision should be governed by Federal law.

*Benge v. Software Galeria, Inc.*, 608 F.Supp. 601, 606 (E.D.Mo. 1985). The Court agrees that the validity of the forum selection clause is controlled by federal law in a diversity action.[3]

Federal law provides that "A party can freely consent to the personal jurisdiction of a court because personal jurisdiction is an individual right capable of being waived." *Midwest Mechanical Contractors, Inc. v. Tampa Construction, Inc.*, 659 F.Supp. 526, 530 (W.D.Mo. 1987). Forum selection clauses are generally considered to be a valid waiver of any objection to personal jurisdiction in the forum state. "However, the forum selection clause containing the defendant's consent must comply with applicable due process standards. Thus, the clause must have been obtained through freely negotiated agreements absent fraud and overreaching and its enforcement must not be unreasonable and unjust." *Id.*

Defendant asserts that the Contract was unreasonable because Defendant was not given the opportunity to make any changes to the Contract terms, and further that suggested language

---

[3]Even were the Court to agree with the Defendant that Missouri law was controlling, the Court does not agree that the forum selection provision would be invalid under Missouri precedent. *Whelan Security Company, Inc. v. R. Andrew Allen*, cited by Defendant, states that "[w]e enforce a forum selection clause unless the party seeking to avoid its application sustains a 'heavy burden' to show the clause is unfair or unreasonable." 26 S.W.3d 592, 595 (Mo.Ct.App. 2000). For the reasons articulated above in the Court's analysis under federal law, Defendant has not met this burden.

7

proposed by Defendant was rejected by Plaintiffs. Defendant specifically points to a "no pay unless we're paid" provision, which provides that Defendant would not be paid if Plaintiffs were not paid by Nordic. The Court is not persuaded by this argument. Both Parties to this action are large corporations, and the rejection of certain proposed changes to the Contract is insufficient to show that Plaintiffs wielded unfair influence over Defendant when negotiating the terms of the agreement. *See Midwest Mechanical Contractors, Inc.*, 659 F.Supp. at 530-531 ("Absent specific evidence that plaintiff used its size to the disadvantage of defendant, disparity in size between the parties does not suggest fraud or overreaching."). In the alternative, Defendant argues that it is unreasonable to enforce the forum selection clause because it would place an undue hardship and expense on Defendant. However, Defendant has provided no support for this assertion, and the Court can find none. Forum selections clauses are routinely enforced, as evidenced by the cases cited above, and the additional cost placed upon Defendant is immaterial to its efficacy. The Court finds that this Court is proper venue for the case, and therefore, Defendant's motion to dismiss for improper venue is denied.

### B. ABSTENTION

Having determined that the Court has personal jurisdiction over the Defendant, and that venue is proper in the eastern district of Missouri, the Court next considers Defendant's argument that abstention is appropriate. Defendant argues that the *Colorado River* abstention doctrine is applicable. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Plaintiffs dispute this doctrine's applicability, specifically arguing that the property that was at issue in the Nebraska action is no longer under the control of the Nebraska court, thereby negating a key factor in the *Colorado River* doctrine.

*Colorado River* summarized the three circumstances in which abstention has traditionally been found to be appropriate, and then articulated a fourth instance where abstention may be appropriate, now generally referred to as *Colorado River* abstention.[4] *Id.* at 817. However, the application of this doctrine is to be limited. *Colorado River*, 424 U.S. at 813. "'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959)). After emphasizing "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them[,]" the Court then states such exceptional circumstances that would warrant declining jurisdiction. *Id.* at 818. The Court lists a number of factors that are to be considered in reaching this conclusion. *Id.* at 818. These factors are concisely summarized by the Eighth Circuit. *Federated Rural Electric Insurance Corp. v. Arkansas Electric Cooperatives, Inc.*, 48 F.3d 294, 297 (8th Cir. 1995).

> Determination of the existence of 'exceptional circumstances' requires evaluation of several factors (the *Colorado River/ Moses H. Cone* factors), as follows: (1) whether there is res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority-not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5)

---

[4]The three recognized bases were summarized as follows:

(a) Abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law;" . . . (b) Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; . . . (c) abstention is appropriate where . . . federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings . . . .

*Id.* at 814-816 (internal citations omitted).

9

whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect federal plaintiff's rights.

*Id.* "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16 (1983).

A key issue disputed by the Parties, and the first factor listed above for consideration, is whether the Nebraska court has jurisdiction over the property at issue in this case, to the exclusion of all other courts. Defendant argues that the property at issue is the ethanol plant in Buffalo County, Nebraska, against which Defendant filed a construction lien. The Nebraska action was filed by Defendant to perfect the construction lien. It is the work on this property that is the subject of the contract at issue before this Court. Plaintiffs dispute that this argument is valid, principally arguing that the property is no longer the subject of the Nebraska suit, due to the filing of a bond, in accordance with Nebraska statute, to remove the lien from the property. *See* Neb.Rev.Stat. § 52-142. That statute states that "[u]pon release of the real estate from lien under this section, the claimant's rights are transferred from the real estate to the deposit or surety bond . . . ." Neb.Rev.Stat. § 52-142(3). The Court recognizes that while the Nebraska court still has an interest in the legal issue before it, regarding the propriety of the construction lien and the bond filed to release the property, the property itself is no longer subject to the lien, and therefore the Nebraska court does not have jurisdiction to the exclusion of all other courts. However, the Nebraska court does have an interest in determining the contract disputes, now secured by the surety bond. Furthermore, both the contract dispute before this Court, and the collection actions in the Nebraska court, involve work performed by the respective parties on the ethanol plant

located in Nebraska. This factor, although it does not mandate abstention, weighs in favor of abstention.

The location of the subject property is one factor to be considered, however, the Court must consider all of the factors articulated above before a finding of exceptional circumstances can be found. The Court considers the next two factors in conjunction: the inconvenience of the federal forum, and whether maintaining separate actions will result in piecemeal litigation. *Federated Rural*, 48 F.3d at 297. Plaintiffs argue that any assertion of piecemeal litigation would be solved by Defendant raising their legal claims as counterclaims in the case before this Court, and the action need not be decided by the Nebraska court. Defendant disputes this, arguing that other contractors have filed liens against the subject property, and that those entities are joined in the Nebraska action. Clearly, by maintaining the action in this Court and the action in the Nebraska court, piecemeal litigation will result.[5] The Court recognizes that "[t]he Supreme Court cases make it clear that this is the predominant factor." *Id.* The Eighth Circuit has furthered this policy by "favoring the most complete action." *Id.* at 298. The Court notes that the Nebraska court has repeatedly denied Plaintiffs' requests to stay the pending action in that court, declining to defer to the jurisdiction of this Court. Furthermore, the Nebraska court is the more convenient forum, as it is the situs of the construction project, and is the only forum where all parties with an interest in the subject property may have their claims adjudicated cohesively.

The fourth factor, which case has priority, is also non-dispositive. *Federated Rural*, 48 F.3d at 297. While this action was filed first, the Defendant filed its construction lien eight days

---

[5]There is no dispute that both cases involve the same contract and the same construction project.

11

earlier, on March 1, 2007.[6] A further consideration under this factor is the progress which has been made in each case. *Id.* Again, this appears to be neutral. This Court postponed ruling on the pending motion to dismiss or abstain, waiting for the Nebraska court to rule on the motion to stay pending before it. The Nebraska court has now denied that motion to stay, however, no significant subsequent action, of which this Court is aware, has taken place. Therefore, both cases are at a similar stage of proceedings.

The fifth factor is whether state or federal law controls. *Federated Rural*, 48 F.3d at 299. Both actions involve the same construction contract, which is governed by state law. The final factor is whether the state court can adequately protect the federal plaintiff's rights. *Id.* As both cases involve the application of state law, the state court could adequately protect plaintiff's rights. Both of these factors weigh in favor of abstention.

The Court concludes that under the factors articulated in *Colorado River*, abstention would ordinarily be appropriate on the facts presented to the Court. The weight of the factors in favor of abstention tip the balance against the heavy preference for the retention of federal court jurisdiction. However, the Court must determine the impact of the forum selection clause on the analysis. The western district of Missouri, in *Midwest Mechanical Contractors, Inc.*, held that a forum selection clause was not dispositive of a motion to transfer venue under 28 U.S.C. § 1404(a).[7] 659 F.Supp. at 531 ("The Court is not prevented by the existence of a valid forum selection clause from considering a motion to transfer made pursuant to § 1404(a)."). Specifically, the court found that a number of factors are to be considered in determining a motion

---

[6]Defendant did not file the action to enforce the construction lien until May 18, 2007.

[7]This section states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

to transfer, and that only the convenience of the parties is a factor that can be affected by a forum selection clause. *Midwest Mechanical Contractors, Inc.*, 659 F.Supp. at 531. The Eighth Circuit in *Dominium Austin Partners, L.L.C. v. Emerson*, denied abstention after finding a forum selection clause to be valid, however it did so without reference to the forum selection clause. 248 F.3d 720, 727 (8th Cir. 2001). The two issues were addressed seperately. *Id.* The Fifth Circuit held, with little discussion, that "the question whether to exercise jurisdiction is antecedent to the choice of law and choice of forum questions. Having found abstention appropriate" the court deferred to the state court to address the law regarding forum selection. *Clark v. Fitzgibbons*, 105 F.3d 1049, 1053 (5th Cir. 1997). The Second Circuit held, in the context of international comity and abstention, that "the fact that such clauses [forum selection clauses] are in an agreement between the parties does not preclude a court from deferring on grounds of international comity to a foreign tribunal where deference is otherwise warranted." *J.P. Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 429 (2nd Cir. 2005).

     The Court concludes that the correct approach in the present case is to address the validity of Defendant's abstention argument, and then leave the question of the enforcement of the forum selection clause to the sound judgment of the Nebraska state court. A key goal of the numerous abstention doctrines, and specifically of *Colorado River* abstention, is to prevent piecemeal litigation. There is currently pending before the Nebraska state court an action involving the same Parties and the same property at issue in the suit before this Court. Furthermore, other subcontractors that may have an action against the Plaintiff are also joined as parties to the Nebraska action, allowing a more complete adjudication of the claim. There are no federal questions involved that would prevent the Nebraska court from properly adjudicating the case, to the contrary, Nebraska has more expertise than this Court in applying Nebraska law. For these

reasons, the Court finds that abstention is appropriate, and any questions of forum were validly decided by the Nebraska court.[8] Therefore the Court grants Defendant's motion to abstain, and dismisses the pending action.

## V. CONCLUSION

The Court concludes that both personal jurisdiction and venue are proper in this Court. The question of abstention raises a more difficult question. However, having reviewed the factors articulated by the Supreme Court and the Eighth Circuit, the Court finds that abstention is appropriate in this case, notwithstanding the heavy weight to be given to retaining jurisdiction. There are no federal questions involved in the case, the property which is the subject of the disputed contract is located in Nebraska, and all of the parties with an interest in the subject property are party to the Nebraska action. Furthermore, the Court finds that the forum selection clause does not impact this Court's abstention determination.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Abstain or Dismiss [doc. #8] is **GRANTED.**

Dated this 26th Day of February, 2008.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

---

[8]Unlike the situation presented in *Clark*, the Nebraska court has already decided Plaintiff's request for a stay based upon the forum selection clause at issue, and denied Plaintiff's motion. *See Clark*, 105 F.3d at 1053. However, this has no impact on the Court's determination that abstention is appropriate.